May it please the Court, my name is Glenn Bruder and I represent the appellant in this matter, John Edwin Kuhnel. Following a two-day trial in which the appellant represented himself, Mr. Kuhnel was found guilty of 11 counts of receiving or possessing child pornography. I was designated to serve as standby counsel at appellant's trial and now represent him before this court. There are two issues that are raised in appellant's brief. The first of these is an argument that the trial court should have suppressed evidence seized by appellant's probation officer from appellant's automobile in November 2016. The facts themselves about this Kuhnel was released from a 36-month state prison sentence in September 2014 and under Minnesota law, Mr. Kuhnel was placed on supervised release for a period of one year. That was to be followed by a 10-year period of conditional release. Supervised release and conditional release in Minnesota are governed by two separate statutes. At the time that he was discharged from prison in 2014, Mr. Kuhnel met with and received a supervised release document setting forth his release conditions. Both the appellant and the government have provided the court with a copy of that particular document. Paragraph 13 of the supervised release document stated that appellant agreed to allow his automobile to be searched without a warrant by his probation officer, essentially at any time the probation officer wished to do so. The supervised release period was for one year and it ended in 2015. The appellant never received a written document setting forth the terms of his release. I'm looking at the document right here on my iPad and it says, it's got a big, on the first page of it, it says conditions of release and then it says below, it says 9-2-24 next to the termination date and it's circled. And this happened before 9-2-24 so I don't understand how he didn't have notice that these conditions still applied. Well first of all, your honor, if you look at the document itself, right below conditions of release is the appellant's name and immediately below that it says supervised release. In fact, you can go through this entire two page document and never once does the phrase conditional release apply. The date that you're talking about is actually written in by hand and I don't know if there was any evidence whether or not the defendant, the appellant actually saw that. But even if he did, there's no indication, essentially that simply tells him that that, I believe, was the end of his parole. Now, one follow-up. So I can't see the whole document. I don't know if it was photocopied not well or whether this is my copy, but it says, where it says supervised release, it says status. And I don't know if it says current status or what because that word is cut off. But it appears to me, I mean, when you take the fact that it says conditions, right, and he's on conditional release and yes, he's on supervised release right now and then the termination date, boy, that seems like an awful stretch to say he didn't have notice that prior to 9-2-2024 that he was, you know, that he didn't have notice of these conditions. Well, a couple of things, Your Honor. First of all, to answer your question, what it says is release status on the complete document. It says release status and then I think there's a colon and it says supervised release. So that just tells us current status, doesn't it? That tells us status as of the date he was released. Yeah, it was a document that was reviewed with him by Minnesota Department of Corrections officials as he was released from prison. And with regard to conditional release, I'm not contending that the appellant didn't understand he was subject to a conditional release period. I think I'm, I hopefully made that point in my reply brief. Even his plea agreement, when he pled guilty, he said he was going to be subject to a conditional release. The appellant's position is he was never explicitly told what the terms of his conditional release were to be. Counsel, that leads to my question. Let's suppose that instead of an ambiguous or confusing acknowledgement, he never received any acknowledgement whatsoever. What would the standard then be for searches during this time? Would it be reasonable suspicion or probable cause or some other standard? Frankly, that's a question I hadn't thought of, but I think it would depend on the circumstances of each particular case. But it kind of goes to the issue, does he really have to have any notice at all, given that he knew he was on some sort of supervised release? I would say the answer to that, Your Honor, is yes, he would have to have some notice because if you look at, I mean, there's a host of I'm not going to debate that they don't apply because they are out there and they're cited at pages 24 and 25 of my brief. They're both from this circuit and from the U.S. Supreme Court, saying that probationers and parolees have a diminished expectation of privacy. But in all of those cases, both in this circuit, that would be the Makoff and Hamilton case, and from the U.S. Supreme Court, the Sampson and U.S. v. Knight's case, both tribunals emphasized that the reason that the probationers and parolees had a diminished expectation of privacy was because they had explicit knowledge of what the terms of their probation were and they understood that one of the terms of their probation was essentially a consent to any search by their parole officer. In this instance, it's not quite so favorable to the appellant as your scenario where nothing's ever disclosed to him, but it certainly is a situation where there was no explicit instruction to Mr. Kuhnel about what the terms of his conditional release were. And based on that, it's my position that he doesn't, the court can't simply rely on the diminished expectation of privacy. Which typically applies to parolees and probationers. And instead, Mr. Kuhnel had a higher expectation of privacy. Let me follow up with that. So let's suppose you're right. I'm going to get into Judge Graz's question and kind of continue the hypothetical. Suppose you're right and he had no idea. No idea whatsoever, so we take this on trust. At that point, if he truly believes that he's not on conditional or supervised release or has conditions. He knows he's on conditional release, but doesn't have conditions allowing a search. Didn't he consent? Now, I understand the government doesn't raise that on appeal, but the district court decided we can affirm on any ground supported by the record. So at that point, he's a normal citizen and this looks an awful lot like consent to me, if you're right. Well, I think you have to look at the very specific factual circumstances of how the search took place then. It wasn't just the appellant and his probation officer strolling over to the car and just kind of a casual conversation of can we look in there or not. It was the appellant being told, first of all, by the probation officer, we are going to look in your car. Second, it wasn't just one probation officer who accompanied Mr. Kuhnel to the car. It was three of them. And there was never any consent requested. They simply told him, we're going to look in your car. Now, Mr. Kuhnel did open up the car for them. I can see that. But he didn't see that he really had any alternative at the time because he wasn't given one. And even the probation officer said, it was my belief that we had the right to search the car. So even the probation officer didn't really approach it as a consent type search. And I suspect that I'm not going to, well, I guess I am going to speak for the government. That might be why they didn't raise the issue before this court. But you do agree that if we disagree with you on whether he had notice based on this form, that we're in suspicionless land under Sampson. Sampson says you don't even really need suspicion when you've got somebody who has a condition like this and has been given that form. I sure wish I could disagree with you, but I can't. There are just too many cases out there saying that parolees and probationers under those circumstances can't really raise the issue. And I'll just briefly touch, unless the court has more questions on this issue, I'll briefly touch on the second issue I raised, which was insufficiency of the evidence to support the conviction for receiving child pornography. When I was in law school, one of my professors said that an argument about insufficient evidence at trial is the last gasp of a desperate appellant. But in this instance, I have a pretty narrow and focused argument for that. To be convicted of receipt of child pornography, an individual needs to be aware that they are in fact receiving child pornography. Possession is a little bit different. You can unknowingly receive child pornography, but if you keep it, you're in possession of it. And in this instance, the government, in order to make its case, did a pretty effective job of showing that Mr. Kuhnel, in the span of, I believe, an hour and 18 minutes, downloaded something like 27,000 documents, many of which contain child pornography. But it's a two-edged sword. Because the point that I also make is that the government, in order But the point that I And yes, I was unknowingly got a bunch of stuff that I didn't want to see, and so I had to refine my search term. Here, the defendant had a lot of searches, but the information came in so quickly, he couldn't know what he was getting when he started downloading. That sounds to me like a download-in-bulk defense. Because that would always be the case. If you download a bunch of images or photos in bulk, the argument would always be I couldn't know. And so the statute would really cover only individual downloads, where you actually see the file, you click download or whatever, and download the file. I don't know if that makes much sense. What's your response to, sort of, and maybe you're not, maybe you think this doesn't create a bulk download defense, but it sure seems like it to me. I don't think it creates a bulk download defense, because oftentimes, in those situations, you can tell that, not just from the searches, which is the government's argument in this case, but you can tell that the search is a bulk download defense. You can tell from the time in which the download took place, the defendant was actually perusing these items as he was downloading them. Here, you can tell exactly the opposite. He wasn't looking at what he was downloading. I'll reserve the last minute and four seconds for my rebuttal. Thank you. Thank you, Mr. Bruder. Ms. Buzicky. Good morning. I may please the court. My name is Kate Buzicky, and I represent the United States on this matter. This defendant, Mr. Cuno, is attempting to ask this court to shift its focus in probation and parolee searches to a territory it has never entered before, to make the key issue, the bright line, the kind of notice or information that could prove a violation of the federal law. But as this court knows, the test has always been now, for a generation essentially, the balancing of the individual's reasonable expectation of privacy, which is low at this stage, versus the government's strong and legitimate interest in preserving the law-abiding nature of people under supervision and enforcing its own terms and conditions on parolees and probationers. So, counsel, what role does the notice and acknowledgement play in the reasonable expectation of privacy? Your Honor, it plays a role, and indeed many cases have noticed or noted that the defendant received notice or had knowledge. As in this case, the district court found he unambiguously received information and instruction about the terms of his release. Well, unambiguously about conditional release, perhaps, but not supervised release, arguably. Your Honor, the court in this case did not make that distinction below. The district court found that Mr. Cuno had notice of the conditions that governed him based on all the facts and records before it. In cases that this court has decided, and at the United States Supreme Court, notice to the defendant has been a issue, and sometimes it has been salient. But it has never been the dispositive issue that Mr. Cuno asks this court to now shift it to be. So let me ask you the same question. Let's suppose he didn't receive any acknowledgement or notice whatsoever. What standard applies? Your Honor, in that case, I would direct the court to McKeith. In McKeith, there was quite a bit of confusion about what standard, if at all, applied to the defendant. And the court, again, focused on the reasonable expectation of privacy, which is low for someone under court supervision, versus the government's strong and legitimate interest in ensuring that individuals with this status remain law-abiding. And, indeed, the status alone has been emphasized. In Sampson, the Supreme Court emphasized the fact that someone by their status alone, as a probationer or parolee, has a diminished expectation of privacy because the government's interest is so strong at that point. So in this case, looking at just the pure facts, when the defendant was convicted at the state court level in 2010, he had noticed that he was on conditional relief. And in that document, it states there are conditions. The statute allows the commissioner, and by her designee as well, to impose any conditions that are deemed to be important or necessary on a probationer. So, am I right, if this is a case where we were to think that it's a case without notice, then you'd be looking at reasonable suspicion under McKeith. If there's the status that you are a person who is under supervision, that knowledge of the status alone, given the statutes and what happened in the original term on the supervision and those conditions, that a reasonable person would understand that they may be subject to search and there would be reasonable suspicion? Is that kind of where we're at? Your Honor, in this case, I believe that's exactly accurate. The defendant had notice back in 2010, and he continued to receive notice via this written document that my colleague has cited and we have also provided to the court. Also, there's uncontested testimony by Officer James that he, in 2015 and 2016, told Mr. Kunal about his conditions. So those conditions were in place, the defendant had notice, and he certified in the document we've been referring to that he understood the conditions. Those facts were found by the district court and they would be reviewable here on clear error? Yes, Your Honor. Okay. Counsel, what about consent? I ask opposing counsel, we may never get there, but I found it curious that the district court found consent and that the government didn't argue that as an alternative on appeal. Yes, Your Honor. This court can affirm on any basis supported in the record. The strong argument for the officer's absolute ability to conduct this search was certainly the most salient argument from the government's perspective. But again, this court can affirm on any basis supported in the record. So it's not true, then, that you dropped consent because you think there's weaknesses in it. You just think that the argument in favor of this being a parole or conditional release search is so strong that you don't even need to get there. Is that the government's position? Yes, Your Honor. The facts of this case are extremely strong. When we look at what the officer was seeing, the prior history of the defendant, his conduct on the morning in question in November 2016, and every other fact surrounding it, this is just a classic probation or parole search. Okay. So again, in this case, the court should return to the traditional test, a test that has been in place for over 30 years, and balance the interest of the probationer in his reasonable expectation of privacy versus the government's extremely strong interest in protecting the law-abiding nature and the ability of its officers to enforce the terms and conditions of individuals under supervised release. I'll briefly touch on the matter of the sufficiency of the evidence. Your Honor, what we should do in this case is look at all of the facts and circumstances, beginning with Step 1. And Step 1 here is Kuhnel's decision to go to one of the most ancient areas of the Internet, the Usenet newsgroups, an area of the Internet that is so far back, it goes almost to the dawn of this technology, and find child pornography there. He made deliberate and intentional steps to join those groups. He downloaded not one, not two, not three, or not one, not two, but three separate types of technology and applications to be a part of these Usenet groups. His search terms then confirm what he was looking for. The officer who testified at trial testified that you could look up Harry Potter. You could look up any other term that you were interested in on Usenet. But Mr. Kuhnel was interested in classic and well-known child pornography terms. So at every step, from the very beginning of his decision to join Usenet, to the way he used Usenet newsgroups, to the way that he downloaded child pornography, we see his intention and his desire to obtain child pornography. And looking further back in the wedge, starting at Step 1, it is very clear that he knowingly and purposefully downloaded child pornography so that he could have it. He wanted to receive child pornography, and that's exactly what he did. The district court made extremely extensive and detailed findings touching on all these points that support guilty verdicts for all nine of the receipt counts in this case. Unless the court has any other questions regarding the sufficiency of the evidence, I will conclude my argument at this point. Seeing none, thank you very much. Thank you, Your Honor. May it please the Court, I have two arguments which hopefully I'll cover pretty quickly. Counsel indicated that the Samson decision by the U.S. Supreme Court essentially says that probation alone gives a probationer sufficient information that essentially makes them vulnerable to any warrantless search. The court did in fact say that, but that's not the entire holding. The court relied on the fact that in California, the statute's governing probation made it very clear to every probationer that they were going to consent to warrantless searches. In contrast, the two statutes that apply here, Minnesota Statute 244.05 and 609.3455, say nothing about consents to warrantless searches. And finally, if the government had chosen to get a warrant in this case, in Minnesota, it's available by telephone. It would have taken 15 minutes. They had Mr. Kuhnel essentially in custody. They give up none of their interests by seeking a warrant in this case, none at all. Thank you. Mr. Bruder, I want to thank you very much for accepting the CJA appointment in this case. I also want to thank you for acting as standby counsel in what looked to be a fairly tumultuous trial. I know from experience that that's a difficult experience for both the lawyer, all the lawyers in the courtroom and the court itself. So thank you for your patience and service. Thank you, Your Honor. I appreciate that. Thank you. The matter has been well briefed and argued, and we'll take it under advisement. Thank you very much.